**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF SOUTH DAKOTA
ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
**PIERRE, SOUTH DAKOTA  57501-2463**

IRVIN N. HOYT
BANKRUPTCY JUDGE

TELEPHONE (605) 224-0560
FAX (605) 224-9020


December 23, 2005


Bruce J. Gering
Assistant United States Trustee
230 South Phillips Avenue, Suite 502
Sioux Falls, South Dakota  57102

Brian L. Utzman, Esq.
Counsel for Debtor
Post Office Box 899
Rapid City, South Dakota  57709-0899


        Subject:   *In re Tammy Jo Pettis*
                   Chapter 7; Bankr. No. 05-50434


Dear Mr. Gering and Mr. Utzman:

    The matter before the Court is the United States Trustee's Motion to Dismiss for Substantial Abuse. This is a core proceeding under 28 U.S.C. § 157(b)(2). This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014. As set forth below, the United States Trustee's motion will be granted.

    The parties agree on the material facts. According to the calculations set forth in the exhibits appended to the United States Trustee's witness and exhibit list, Debtor has monthly disposable income of at least $315.27 and possibly as much as $836.76, depending on the manner in which Debtor's and her live-in boyfriend's monthly expenses are allocated between them based upon their respective monthly incomes. At the November 29, 2005 hearing on the United States Trustee's motion, Debtor accepted those calculations. Debtor argued, however, the Court should not take into account her live-in boyfriend's monthly income.

    If the Court considers Debtor's live-in boyfriend's monthly income, Debtor clearly has the ability to pay her creditors. Even if Debtor were to pay 50% of the household expenses - despite the fact Debtor earns significantly less than her live-in boyfriend and could thus be expected to pay a lesser share - Debtor would have monthly disposable income of $315.27. That would enable Debtor to

Re: *Tammy Jo Pettis*
December 23, 2005
Page 2

pay more than 90% of her unsecured debt through a chapter 13 plan over a three-year period, after allowance is made for the chapter 13 trustee's percentage fee. This significant ability to fund a chapter 13 plan would warrant dismissal of her case for substantial abuse under 11 U.S.C. § 707(b). *See Stuart v. Koch* (*In re Koch*), 109 F.3d 1285 (8th Cir. 1997); *Fonder v. U.S.* (*In re Fonder*), 974 F.2d 996 (8th Cir. 1992); *United States Trustee v. Harris* (*In re Harris*), 960 F.2d 74 (8th Cir. 1992). Thus, the only question to be answered is whether the Court should consider Debtor's live-in boyfriend's monthly income in determining Debtor's monthly disposable income.

In her response to the United States Trustee's motion, Debtor cited *Meler v. United States Trustee* (*In re Meler*), 295 B.R. 625 (D. Ariz. 2003). In *Meler*, on appeal from the bankruptcy court's finding of substantial abuse under § 707(b), the court held the debtor could not claim his live-in girlfriend and her children as dependents and thereby increase his monthly expenses and reduce his monthly disposable income. In recalculating the debtor's monthly disposable income, the court stated the United States Trustee's "calculations of [the debtor's] monthly income improperly included the monthly income of [the debtor's] girlfriend." *Meler*, 295 B.R. at 632.

The instant case presents a slightly different situation than *Meler*, however. The United States Trustee is not asking the Court to include Debtor's live-in boyfriend's monthly income in Debtor's monthly income. He is only asking the Court to consider Debtor's live-in boyfriend's monthly income in determining Debtor's *pro rata* share of their household expenses.[1] Moreover, the Court does not find *Meler* persuasive, because the *Meler* court did not explain its reasoning or offer any support for its statement regarding the inclusion of the debtor's girlfriend's income.

Courts that have answered the same question in determining the dischargeability of a debt under 11 U.S.C. § 523(a)(15)[2] have reached a different conclusion. In *Short v. Short* (*In re Short*), 232 F.3d 1018 (9th Cir. 2000), the Ninth Circuit Court of Appeals held the bankruptcy court could consider a live-in girlfriend's income in determining the debtor's "ability to pay."

---

[1] In a December 7, 2005 letter offered to supplement the record, Debtor's attorney confirmed Debtor and her boyfriend have been living together since May 2001.

[2] In pertinent part, § 523(a)(15) excepts from discharge any debt, other than alimony, maintenance, or support, "incurred by the debtor in the course of a divorce or separation . . . unless the debtor does not have the ability to pay such debt . . ."

> [A] bankruptcy court may consider the income of a debtor's live-in romantic companion whenever the debtor and his or her live-in romantic companion are economically interdependent or for a single economic unit.

*Short*, 232 F.3d at 1024. The Seventh Circuit Court of Appeals reached the same conclusion.

> The bankruptcy court determined that it ought not take into account the contribution of [Debtor's] live-in girlfriend to his economic condition. However, economic interdependence can indeed result in a significant alteration of economic realities. To the extent her contribution to household living expenses actually improved [Debtor's] economic picture, it was not, we believe, a factor that ought to have been eliminated from any consideration.

*In re Crosswhite*, 148 F.3d 879, 889 (7th Cir. 1998). *See also Mannix v. Mannix* (*In re Mannix*), 303 B.R. 587, 597 (Bankr. M.D. Pa. 2003) (citations therein); *Halper v. Halper* (*In re Halper*), 213 B.R. 279, 284 (Bankr. D.N.J. 1997) (citations therein).

When a motion to dismiss for substantial abuse is presented, the Court's primary inquiry is whether the debtor has the ability to pay her creditors. *Koch*, 109 F.3d at 1288 (citing *Walton*, 866 F.2d at 983); *Nelson v. Siouxland Federal Credit Union* (*In re Nelson*), 223 B.R. 349, 353 (B.A.P. 8th Cir. 1998). The majority of courts appears to have decided a court should consider a live-in boyfriend's or girlfriend's income in determining a debtor's "ability to pay" under § 523(a)(15). This Court will do the same in determining a debtor's "ability to pay" under § 707(b). As the court explained in *Halper*:

> This court agrees with the reasoning of those courts which find that consideration of all income that flows into a debtor's immediate household is relevant to the determination of a debtor's ability to meet his obligations . . . .

*Halper*, 213 B.R. at 284 (citation omitted).

The Court's holding is not that Debtor's live-in boyfriend must pay - or even help pay - Debtor's debts or living expenses. The Court is saying only that Debtor's economic reality is that she shares a household. Consequently, she should pay her fair share - but no more than her fair share - of the household's expenses. Were she to pay only her fair share of those expenses, Debtor would

Re: *Tammy Jo Pettis*
December 23, 2005
Page 4


be able to pay her creditors.

    Accordingly, under the circumstances presented, unless Debtor voluntarily converts her case to chapter 13 on or before January 9, 2006, her case will be dismissed for substantial abuse. The Court will enter an appropriate order.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

cc: case file (docket original; serve to parties in interest)

I hereby certify that a copy of this document was electronically transmitted, mailed, hand delivered or faxed this date to the parties on the attached service list.

DEC 23 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court, District of South Dakota
By_____

**NOTICE OF ENTRY**
Under F.R.Bankr.P. 9022(a)
Entered

DEC 23 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court
District of South Dakota

Tammy Jo Pettis
3260 Cyclone Street No. 36
Rapid City, SD 57703